## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00007-SCT

*CONNIE RAE ATKINSON RILEY*

*v.*

*BILLY WAYNE DOERNER*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/94 |
| TRIAL JUDGE: | HON. GEORGE D. WARNER, JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LESLIE C. GATES |
| ATTORNEY FOR APPELLEE: | EARL P. JORDAN |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 6/27/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/18/96 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. By order of October 28, 1994, the Chancery Court of Lauderdale County transferred custody of Desiree Nicole Doerner from her mother, Connie Rae Riley, to her father, Billy Wayne Doerner. On appeal by Connie, the Court of Appeals affirmed the chancellor's decision. We granted Connie's petition for writ of certiorari to clarify the standard for modification of child custody decrees. We affirm.

### II. FACTS AND PROCEDURAL HISTORY

¶2. On April 12, 1989, an order of the Chancery Court of Lauderdale County adjudicated Billy Wayne Doerner to be the father of the child Desiree, born to Connie Rae Atkinson in 1986. The parties were given joint custody of Desiree, with Connie to have physical custody. Billy was ordered to pay $200.00 per month in child support. On October 25, 1993, Billy filed a motion to modify child custody, asserting a material change in circumstances adversely affecting Desiree. Billy charged that Connie was "totally unfit morally and has negligently cared for the minor child," and requested exclusive custody.

¶3. Hearing was held on October 19-20, 1994. Testimony showed that Connie had moved a number of times since 1989; that Desiree had attended several different schools due to the moves; that Desiree had flunked first grade, but was currently doing well in school and had a perfect attendance record that year. Testimony further showed that Connie had been employed only sporadically over the years, her occasional income supplemented by food stamps, S.S.I. for her son Joshua, and child support from Billy. Connie testified that now that she was married, she would have regular income from her new husband Jerry Riley;[1] however, Riley testified that his income was not regular, and that it was "hard to say" what it was or would be. Testimony showed that Connie had lived with men prior to and subsequent to her cohabitation with Billy. Jerry Riley testified that he smoked marijuana "every once in a while," as did Connie, but that they did not smoke it around the kids. Connie denied, then admitted to having smoked marijuana occasionally. It was established that Billy had lapsed in his support payments for a time but had made them up; that he had married his current wife Robin in December of 1992, after a divorce from another woman; that Billy and Robin lived in a home in Collinsville, Mississippi, although Billy was out of town working for a construction company for weeks at time; and that Robin was employed part-time.

¶4. In his ruling of October 20, 1994, the chancellor stated that he strongly believed that it would be in Desiree's best interest to live with her father, owing to the bad "totality of circumstances" surrounding Connie ( *i.e*., frequent moves, a succession of live-in boyfriends, use of drugs, etc.). However, the chancellor found, he could not at that time transfer custody of Desiree because 1) there had been no material change in circumstances, since "every one of them had been going on at the time" of the original judgment, and 2) he could find no adverse effect on Desiree. The chancellor ordered that Connie and Jerry Riley submit to a drug test that week, and then at intervals of two weeks; if either failed, custody of Desiree would automatically be transferred to Billy.

¶5. On the first test, reported October 24, 1994, Riley tested negative, but Connie tested positive for marijuana use. By judgment entered October 28, 1994, the chancellor noted Connie's positive drug test and granted custody of Desiree to Billy. Connie filed a motion to amend the October 20th judgment and to set aside the October 28th judgment, arguing that her marijuana use had no presumptively adverse effect on Desiree and thus should not be used as a basis for transferring custody. Drug tests on Riley and Connie reported November 7, 1994 were both negative. Connie's motion was denied by order entered November 23, 1994.

¶6. Connie appealed the court's October 20th, October 28th, and November 23rd rulings, raising as error: 1) the custody decree should not have been modified absent a finding of a change in Connie's circumstances (as custodial parent), adversely affecting Desiree; and 2) the court exceeded its authority in ordering a drug screen incident to change of custody proceeding. She suggested that the custody change had been for the purpose of punishing her and rewarding Billy.

### III. COURT OF APPEALS DECISION

¶7. In an opinion rendered December 29, 1995 the Court of Appeals rejected both of Connie's arguments. The Court noted that the chancellor had not found a material change in Connie's circumstances since the time of the original judgment having an adverse effect on Desiree. However, the Court concluded, the chancellor had not been manifestly wrong in transferring custody, because such transfer was in Desiree's best interest. The Court stated:

We must stress that we are not in any way retreating from the long standing rule stated above regarding custody, but merely emphasize that the best interest of the child is the chief concern of this Court. In all child custody cases, the polestar consideration is the best interest of the child.

**Riley v. Doerner**, No. 95-CT-00007, slip op. at 4 (Miss. Ct. App. Dec. 29, 1995) (citations omitted) .[2] The Court next found that the chancellor had erred when it ordered Connie and Riley to take a drug test, because no authority supports such testing. However, the Court held, Connie was procedurally barred from raising this issue because she had failed to make a contemporaneous objection.

## IV. DISCUSSION OF ISSUE RAISED IN PETITION FOR CERTIORARI[3]

¶8. Connie argues in her petition for certiorari that the Court of Appeals decision is in conflict with this Court's decisions concerning modification of child custody. Specifically, Connie argues that this Court has required that the movant prove an adverse change in circumstances on the part of the custodial parent; therefore, the Court of Appeals exceeded its authority in affirming a decision that was not based on a material adverse change in Connie's circumstances.

¶9. This Court has articulated the law of modification of child custody as follows:

First, the moving party must prove by a preponderance of evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which *adversely* affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.

**Ash v. Ash**, 622 So. 2d 1254, 1265-66 (Miss. 1993) (citing **Pace v. Owens**, 511 So. 2d 489, 490 (Miss. 1987)). The change in circumstances "is one in the overall living conditions in which the child is found. The 'totality of the circumstances' must be considered." **Tucker v. Tucker**, 453 So. 2d 1294, 1297 (Miss. 1984) (citing **Kavanough v. Carraway**, 435 So. 2d 697, 700 (Miss. 1983)). A change of circumstances in the non-custodial parent is not in and of itself sufficient to warrant a modification of custody. *See* **Duran v. Weaver**, 495 So. 2d 1355, 1357 (Miss. 1986); **Bowden v. Fayard**, 355 So. 2d 662, 664 (Miss. 1978).

¶10. The chancellor in this case stated that in his judgment, there was "absolutely no question that . . . it would be in the best interest of this child to live with her father." He noted, however, that "the[Mississippi] Supreme Court puts that third and not first or second." The chancellor concluded that because the first two elements of the test had not been met - a showing of a change in circumstances, adversely effecting Desiree - he could not transfer custody of Desiree from Connie to Billy.[4] Accordingly, he did not transfer custody of Desiree to Billy until Connie failed the drug test. In essence, the chancellor made a "best interests" decision at that point.

¶11. Such a "best interest" decision could have, and should have been made at the conclusion of trial, given the chancellor's findings concerning the still-unwholesome environment of Connie's home, and the improvement in Billy's circumstances. In earlier opinions on this subject, we have held that a change in the circumstances of the non-custodial parent does not, by itself, merit a modification of

custody. *Duran*, 495 So. 2d at 1357; *Bowden*, 355 So. 2d at 664. We adhere to that holding today. However, we further hold that when the environment provided by the custodial parent is found to be adverse to the child's best interest, *and* that the circumstances of the non-custodial parent have changed such that he or she is able to provide an environment more suitable than that of the custodial parent, the chancellor may modify custody accordingly. This must be so, for "in all child custody cases, the polestar consideration is the best interest of the child." *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss. 1994). *See also Moak v. Moak*, 631 So. 2d 196, 198 (Miss. 1994); *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶12. We further hold that where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. Evidence that the home of the custodial parent is the site of dangerous and illegal behavior, such as drug use, may be sufficient to justify a modification of custody, even without a specific finding that such environment has adversely affected the child's welfare. A child's resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.

¶13. Accordingly, in this case, once the chancellor determined that Connie's home was the site of illegal drug use, as well as other behavior adverse to Desiree's welfare, and determined that Billy's circumstances had improved such that he was able to provide a good home for Desiree, it was within his discretion to transfer her custody from Connie to Billy, despite the fact that he could not discern any negative effect on Desiree caused by Connie's home environment. Moreover, the transfer would have been appropriate despite the absence of a material change in Connie's circumstances, since a lack of change in Connie's circumstances meant the perpetuation of an unhealthy environment.

¶14. It is evident from the chancellor's comments that he felt constrained by doctrine developed by this Court concerning custody modification from doing what he thought was best for Desiree: transferring her custody from Connie to Billy. The chancellor stated that there was "absolutely no question that . . . it would be in the best interest of this child to live with her father," but that this Court "puts [the child's best interest] third and not first or second" in our test for custody modification. Since he could find no change in circumstances, the first element of the test, nor an adverse effect on Desiree, the second element of the test, the chancellor concluded that he was powerless to consider whether a change in custody was in Desiree's best interest - the third element of the test for modification. We understand and appreciate the chancellor's adherence to the test we have articulated. However, we take this opportunity to clarify that a chancellor is *never* obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's best interest above all else. "Above all, in 'modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child.'" *Ash v. Ash*, 622 So. 2d 1264, 1266 (Miss. 1993) (citing *Marascalco v. Marascalco*, 445 So. 2d 1380, 1382 (Miss. 1984)). *See also Albright*, 437 So. 2d at 1005. The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of an individual case. In particular, it should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.

¶15. We note that in most cases, a straightforward application of the test for custody modification - that is, starting with the requirement of a showing of a material change in circumstances, adversely affecting the child's welfare - will result in a decision consistent with the best interests of the child. For that reason, today we neither reject nor alter this standard. We simply point out that there will occasionally be cases, such as the one at bar, in which a strict application of the test produces a result clearly contrary to the child's best interest. In such rare cases, no rigid test or magic words should stand in the way of the chancellor as he or she acts to improve the child's welfare through a modification of custody.

¶16. In this case, the chancellor concluded from the evidence that Desiree's best interest would be served by transfer of custody from Connie to Billy. However, because a strict application of the test for custody modification dictated that no custody change was merited, the chancellor first ruled that Desiree would stay in Connie's custody. It was only after Connie tested positive for marijuana use, that custody of Desiree was transferred to Billy. Perhaps the better course would have been for the chancellor to transfer custody upon his original finding that there was "absolutely no question that . . . it would be in the best interest of this child to live with her father." However, as noted above, we understand that the chancellor sought to comply with the articulated standard of this Court. Ultimately, the chancellor placed Desiree in her father's home, where he found that her welfare would be best served. This was the correct result, if reached through somewhat indirect means. On appeal, we will affirm a decision where the right result is reached, even though we may disagree with the reason for that result. *Pucket v. Stuckey*, 633 So. 2d 978, 980 (Miss. 1993); *Stewart v. Walls*, 534 So. 2d 1033, 1035 (Miss. 1988).

## V. CONCLUSION

¶17. In weighing a request for modification of child custody, a chancellor's ultimate concern must always be whether such change would be in the child's best interest. In this case, the chancellor's transfer of Desiree's custody from her mother to her father was best served Desiree's welfare. The Court of Appeals properly upheld the trial court's judgment on this basis. We affirm.

¶18. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Connie Rae married Jerry Riley the day before trial. They had apparently been living together prior to their marriage.

2. The Court of Appeals also appears to have relied on *Westbrook v. Oglesbee*, 606 So.2d 1142 (Miss. 1994) in concluding that the chancellor had properly transferred custody of Desiree because of Connie's lifestyle. The custodial mother in *Westbrook*, like Connie, lived with a succession of men and used drugs. However, the chancellor and this Court found a material change in circumstances in *Westbrook*. 606 So.2d at 1144.

3. In her petition for certiorari, Connie does not raise as an issue the propriety of the drug test. We agree with the Court of Appeals that this issue is procedurally barred for lack of contemporaneous

objection.

4. The chancellor noted that he could not use changes in Billy's life, of which he approved, as a basis for transferring custody of Desiree:

> Billy Wayne Doerner has cleaned up his act, he's gotten his feet on the ground, he's a responsible citizen, he's a hard worker, he makes a decent living, he's married to a lovely lady . . . . The big material change is Mr. Doerner's change and I don't think the law allows me to use the fact that he's cleaned up his act to say that you [Connie] haven't cleaned up yours . . . .