# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CA-01836-COA

**THOMAS LEE ROBISON**                                                                    **APPELLANT**

**v.**

**CAROL DENISE ROBISON LANFORD**                                                 **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 07/28/1999 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFERSON DAVIS GILDER |
| ATTORNEY FOR APPELLEE: | KINNEY M. SWAIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | MODIFICATION ORDER ENTERED GRANTING CUSTODY TO MOTHER |
| DISPOSITION: | REMANDED FOR FINDINGS - 06/26/2001 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE SOUTHWICK, P.J., CHANDLER, AND MYERS, JJ.

SOUTHWICK, P.J., FOR THE COURT:

¶1. Carol Lanford sought to modify the custody awarded in an earlier judgment of divorce, which had given her ex-husband primary custody of their child. The chancellor agreed to award her primary custody. The father, Thomas Lee Robison, argues on appeal that the chancellor applied the incorrect legal standard for modification, that no substantive evidence was offered in support of the modification, that inadmissible evidence was considered, and that some statutory defects exist in the process. We find that the chancellor applied the wrong legal standard. We remand for sixty days in order that the chancellor may expand on her findings of fact and address the matter of in-chambers testimony that she took from the parties' child.

### FACTS

¶2. Thomas Lee Robison and Carol Denise Robison, now Lanford, were married in 1990. They had one child, Britney, born in 1991. In December 1992, Mr. Robison filed for divorce. It was granted on the grounds of irreconcilable differences by a decree dated March 25, 1993.

¶3. The divorce decree incorporated the parties agreement to joint legal custody of the child. The agreement also provided that Mr. Robison was to have primary physical custody of the child during nine months of the year from September through May and that Mrs. Lanford was to have primary physical

custody in June through August. Each party was awarded reasonable visitation rights during the period of the other's custody. Mr. Robison was to pay $150 per month child support for the three months in which Mrs. Lanford had physical custody of the child.

¶4. Mr. Robison filed a motion to modify custody on December 9, 1997. He sought sole custody of the child as well as child support from Mrs. Lanford. Mrs. Lanford answered the claim and filed a cross-motion seeking sole custody as well as child support from Mr. Robison. The dispute was settled by consent modification decree dated December 30, 1998. The decree left custody unchanged but clarified visitation.

¶5. In late March 1999, Mrs. Lanford noticed bruising on the child's buttocks. The child informed her that the bruising was a result of a spanking by her father. Mrs. Lanford took the child to a hospital emergency room where she was treated by Dr. Wheelis. The doctor noted that there were two circular bruises about six centimeters in diameter on the child's backside and diagnosed physical abuse. Mr. Robison stated that the child was spanked with a paddle because she had lied and also stolen something, and that excessive force was not used. The matter was referred to a social services agency for an investigation into possible child abuse. Although the report is not in the appellate record, the testimony showed that the result of their investigation was that the evidence was inconclusive. No further action was taken.

¶6. Approximately one month later, Mrs. Lanford filed a new petition to modify the former decree and to give her sole legal and physical custody of the child. While that was pending, the chancellor granted the parties' joint motion for the Department of Human Services to conduct a detailed study of the living environment of both parents. The study concluded that either home would provide a stable environment for the child.

¶7. A hearing was held on July 28, 1999. The court reviewed the results of the home studies, listened to testimony of the parties, and held an in-chambers conference alone with the minor child. The court found that it would be in the best interest of the child for Mrs. Lanford to have physical custody with visitation privileges for Mr. Robison. Mr. Robison appealed.

## DISCUSSION

### I. *Legal Standard for Modification of Custody*

¶8. The chancellor modified the December 30, 1998 consent decree and awarded custody of the minor child to the mother, Mrs. Lanford. The chancellor stated in her order that based on the evidence received, "it would be in Britney's best interest that her custody be awarded to her mother, Ms. Lanford, at this time." The chancellor did not identify nor even discuss a material change in circumstances adversely affecting the welfare of the child.

¶9. The Mississippi Supreme Court has not permitted chancellors just to reconsider the initial custody decision every time a parent seeks a modification. A final custody order, either never appealed or accepted after appeal, is valid. Modifying that order requires two things to be shown:

> First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires a change of custody.

*Pace v. Owens*, 511 So. 2d 489, 490 (Miss. 1987). As *Pace* indicates, the burden of proof is on the movant to show the material change of circumstances. "The sort of change which would indicate the desirability of a change of custody, legally speaking, is one in the overall living conditions in which the child is found. The 'totality of the circumstances' must be considered." *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984).

¶10. The chancellor never discussed whether she found circumstances to have been altered. Instead, she found it to be her "duty to weigh all of the evidence, and take it into consideration and to make a decision about where this child shall live at this point in her life." She found "that it would be in Britney's best interest that her custody be awarded to her mother, Ms. Lanford, at this time." This is the analysis for an initial custody decision but is improper for a modification without the initial threshold determination that the circumstances that led to the original custody decision have been changed to the detriment of the child. We have already indicated that the home study found each parent equally capable of providing a stable environment. Some allegations against the father were found to be inconclusive. What was adverse with the father's continuing custody is unclear.

¶11. It is true that the Supreme Court has described an exception to the prerequisite of a material change in circumstances adverse to the interest of the child:

> However, we take this opportunity to clarify that a chancellor is *never* obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's best interest above all else. . . . The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of the individual case. In particular, it should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.

*Riley v. Doerner*, 677 So. 2d 740, 744-45 (Miss. 1996). Mrs. Robison interprets that as having eliminated the requirement of a change of circumstances adverse to the child's best interest and declared that every modification now starts and ends with the chancellor's decision of what is in the child's best interest. The supreme court has not made so revolutionary a change in the law.

¶12. *Riley* was a narrow exception. In some situations the best interests of the child so clearly require a modification in custody that the absence of a material change in circumstances adverse to the child should not bar a new order. The kinds of situations to which this principle applies are shown in *Riley* itself. There the problem with the normal prerequisite for modification was that no change had occurred in the custodial home provided by the mother. She and others in that home smoked marijuana; she moved frequently; there was little stability in employment or other important factors. However, none of that was a change from conditions at the time of the initial custody order. *Riley,* 677 So. 2d at 742. The supreme court found that the material improvement in the father's situation justified the change in custody. *Id*. at 745.

> We note that in most cases, a straightforward application of the test for custody modification--that is, starting with the requirement of a showing of a material change in circumstances, adversely affecting the child's welfare--will result in a decision consistent with the best interests of the child. For that reason, today we neither reject nor alter this standard. We simply point out that there will occasionally be cases, such as the one at bar, in which a strict application of the test produces a result clearly

contrary to the child's best interest. In such rare cases, no rigid test or magic words should stand in the way of the chancellor as he or she acts to improve the child's welfare through a modification of custody.

*Id.*

¶13. It is apparent that the initial decision on custody in *Riley* was a difficult choice between two unsatisfactory possibilities. When the non-custodial parent's life took a significant change for the better, which is not a material change in circumstances adverse to the child's interest, the earlier custody dilemma now had a much more satisfactory resolution.

¶14. Whatever else might justify eliminating the need to meet the threshold requirement of a change adverse to the child's best interest, nothing presents itself in this case. The chancellor simply decided to look anew at the custody decision and held that the mother was a better choice. Earlier custody decrees have more finality than that.

¶15. Mr. Robison also argues that even beyond the absence of a finding of a material change in circumstances, the chancellor's decision fails because it is devoid of any evidence that she considered the relevant factors in her determination of the best interests of the child. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). These factors should be considered for custody modification after a finding of a material change adverse to the child, just as they are for an initial custody determination. *Rodgers v. Taylor*, 755 So. 2d 33, 37 (Miss. Ct. App. 1999).

¶16. Mrs. Lanford argues that there was sufficient evidence presented which supported the finding that it was in the child's best interest to modify custody. More importantly she argues that it can be inferred from this evidence that the chancellor considered the *Albright* factors in her decision. We make no decision as to whether or not the chancellor's ruling lacked evidentiary support, but without specific findings in the record we cannot, as a reviewing court, make a decision as to whether or not the chancellor's decision was manifestly wrong or clearly erroneous.

¶17. Again, however, this issue is not even reached until a material change in circumstances adverse to the interest of the child is first found. We reverse because of the failure of the chancellor to address as a prerequisite to the custody modification whether a material change in circumstances adverse to the child's best interest had occurred. Whether we should enter judgment here or remand for further proceedings is resolved under the next issue.

## II. *Sufficiency of evidence for modification*

¶18. We should enter judgment here unless there was some evidence presented that would justify a finding, though none was made, that a material change in circumstance adverse to the interests of the child had occurred. The evidence that is in the record will therefore be examined.

¶19. The central piece of evidence presented by Mrs. Lanford was the bruising on the child's backside. Mrs. Lanford argued that the bruising was evidence that the child had been abused by the father. The emergency room physician, Dr. Wheelis, stated in his deposition that the bruising was the result of an excessive spanking and that it was consistent with child abuse. Dr. Wheelis explained that his diagnosis of child abuse meant that "there was probably some undue amount of physical force exacted upon this child." Following procedure, Dr. Wheelis filed a report with social services. The child's grandmother, an

emergency room nurse, testified that she had examined the child and that the bruising on the child's backside was in her opinion the result of an excessive spanking and consistent with child abuse. There is no dispute in the record as to the origin of the bruising. Mr. Robison admitted that the bruising was the result of a spanking that Brittany received for stealing and lying. He stated that he may have spanked her too hard and that he was sorry that he left bruises. Although not in the record, it appears that the result of the social services investigation was that the evidence of child abuse was unsubstantiated.

¶20. An allegation of child abuse is a very serious matter. As all allegations in litigation, however, it is for a court to analyze whether evidence exists sufficient to support it. Bruising on a child resulting from a spanking is to be considered. However, "an isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change in custody." *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984). There is no evidence in the record that this child has been subjected to excessive spankings on any other occasion, nor is there any evidence that this child has ever been subjected to any other treatment that might be construed as child abuse. Unless there is meaningful evidence beyond the one incident that would support a material change in circumstances adverse to the interest of the child, modification would not be justified.

¶21. Among the other evidence presented by Mrs. Lanford was testimony that Mr. Robison choked Mrs. Lanford in their daughter's presence in 1995, that Mr. Robison had left Brittany on one occasion without supervision, that Mr. Robison had once denied his former wife visitation, and that he had allowed his older children to drink beer in Brittany's presence. Mr. Robison denies all of these allegations except the choking incident. The chancellor also interviewed the child alone in her chambers with the parties' permission. We have no idea what information was gained from that discussion. In the next issue we also analyze Mr. Robison's arguments that all of this evidence is inadmissible because they constitute events that would have occurred if at all prior to the December 30, 1998 consent decree. We ultimately disagree with Mr. Robison as to inadmissibility and therefore will consider the evidence in our review.

¶22. In order to determine whether the chancellor could have found a basis for modification, we view all of this disputed testimony in the light favorable to its proponent. Would this evidence if accepted by the chancellor have justified a modification? Though the known evidence may not be sufficient, we find that since the parties agreed to let the chancellor have an off-the-record discussion with the child, we cannot ignore the possibility of something relevant having been said there. The chancellor made no findings about the disputed facts that may have led her to change custody, and only indicated that she considered all the evidence that she heard that day including the in-chambers conversation with Brittany. We do not make a ruling that such *in camera* evidence unknown to the parties generally is to be considered on appeal.

¶23. We do not ignore that it is the practice of some chancellors to interview children in chambers, perhaps without any other observers and especially when attempting to determine whether a minor over the age of twelve has a preference for which parent will have custody. *Bell v. State,* 572 So. 2d 841, 846 (Miss. 1990); Miss. Code Ann. § 93-11-65 (Supp. 2000). Contrasted with a simple statement of preference which then becomes known to the parties by the chancellor's announcement, is potentially more detailed and unknown information about conduct of the parents being provided by the child which is then relied upon to reach a decision. There is a necessity for the appellate court to be able to review those details. Child witnesses may testify in open court unless it is shown that they cannot perceive and remember events, meaningfully understand and answer questions, and appreciate the importance of truthfulness. *Mullins v. State*, 757 So. 2d 1027, 1031-32 (Miss. Ct. App. 2000); M.R.E. 601. Our holding only is that since the chancellor referred to the conversation and the parties permitted it, that potential evidence cannot be

disregarded.

¶24. Therefore, instead of either rendering or remanding at this time, we order that the chancellor make such findings of fact as she finds appropriate to explain the evidence that she found to justify a change in custody. If weight was given to what Brittany stated in chambers, then that became evidence that the parties and this appellate court cannot review since it is not in the record. A new and transcribed interview with Brittany would be necessary, held under such restrictions as are acceptable to the chancellor and the parties that still would allow us to review a record of what Brittany says. Any necessary hearing and the findings made and certified to this Court are to occur within 60 days of the release of this opinion.

### III. Admissibility of certain evidence

¶25. We have considered in the previous issue certain evidence that Mr. Robison argues was inadmissible. Based on the conclusions that we now explain, we considered all the evidence to have been admissible. First, the chancellor admitted evidence regarding events that occurred prior to the December 30, 1998 consent decree. Mr. Robison argues that any conduct prior to that December 30, 1998 consent judgment cannot be considered because of the doctrine of *res judicata*. He is correct that the consent judgment is *res judicata* as to any issues that might have been litigated and determined at the time of the December 30, 1998 judgment. *Childers v. Childers*, 717 So. 2d 1279, 1280 (Miss. 1998). However, because Mr. Robison failed to object to the introduction of such evidence he did not properly preserve the issue for appeal. When parties oppose the introduction of evidence, they must make a timely objection or motion to strike. M.R.E 103(a) (1).

¶26. Even if an objection had been made, an issue would have arisen of whether the conduct being discussed was known or reasonably should have been known at the time of the earlier decree. Further, to the extent the conduct appeared relatively minor at the time of the earlier decree, its continuation or worsening since were relevant in the chancellor's consideration. As the spanking incident already discussed indicates, what might not be sufficient in isolation may become more meaningful because of a subsequent pattern of conduct.

¶27. Second, Mr. Robison argues that it was error for the chancellor to hold an in-chambers conference alone with the child. In the chancellor's July 28, 1999 bench ruling, she states "Let the record reflect that I have visited with the child in question, Brittnay,[1] in chambers by agreement of both parties." To the extent what the young girl said influenced the chancellor's decision, we have no means to review it. The Supreme Court once (it has not subsequently cited it) held that even an in-camera interview on whether a child was competent to testify should result in an adequate record to determine the validity of the decision. *Jethrow v. Jethrow*, 571 So. 2d 270, 273-74 (Miss. 1990). Here the evidence was potentially much more meaningful since it was not just a prelude to in-court testimony, it was the testimony. Since neither party objected to the chancellor's conducting of this private meeting, it is not reversible error. However, we have already discussed the difficulty of permitting any statements made by Brittany to be the determining factor in the chancellor's decision and have issued our order to deal with that consideration.

¶28. Mr. Robison also argues that it was error to allow Mrs. Lanford's mother, Shirley Mordecai, to give opinion testimony without the proper predicate. At trial Mrs. Mordecai was asked in her opinion as an emergency room nurse what the bruises that she saw on the child would indicate to her. Mr. Robison's counsel objected and Mrs. Lanford's counsel responded by offering to tender the witness as an expert for voir dire. According to the trial transcript, Mr. Robison's counsel did not respond to the offer. Mrs.

Mordecai was then allowed to give her opinion that the bruises were severe and were indicative of child abuse.

¶29. At least two issues arise from the procedure that was followed. One is whether this was expert testimony. Another is whether counsel's failure to conduct voir dire when given an opportunity hinders the consideration of the issue on appeal. We find that Mrs. Mordecai's testimony only duplicated the testimony of Dr. Wheelis as to the same bruises. At this stage we need not determine the propriety of the manner in which the objection was resolved.

### IV. Statutory requirement of affidavit

¶30. Mr. Robison next argues that it was error for the chancery court to consider the petition for modification because it did not contain certain disclosures required by statute. The statute requires a statement regarding whether other custody proceedings have been previously held or are currently occurring and whether someone else not a party has physical custody of the child. Miss. Code Ann. § 93-23-17 (Rev.1994).

¶31. No objection below was made on this basis. The statute does not state the effect of the failure to comply with this provision. No precedents have been cited to us that suggests the failure to satisfy the provision is jurisdictional and cannot be waived. We find that the absence of these disclosures was waived by the failure to point them out to the trial court, at least in the absence of any indication that there were actually other proceedings that the chancellor needed to consider.

### Summary

¶32. After findings are made, the parties are granted fifteen days from the date that the findings are filed with this Court to file simultaneous briefs of no more than ten pages in length addressing any issues that are raised by the findings. No reply briefs are to be filed.

¶33. **THE CHANCERY COURT OF SUNFLOWER COUNTY IS ORDERED TO PROVIDE FINDINGS AS TO THE FACTS THAT IT FOUND JUSTIFIED A CHANGE IN CUSTODY, TO CONDUCT SUCH INTERVIEW OF THE CHILD AS MAY BE NECESSARY BUT ONLY IF STATEMENTS THE CHILD EARLIER MADE TO THE CHANCELLOR ARE THOUGHT RELEVANT TO THE FACT FINDING, AND TO CERTIFY THE FINDINGS TO THIS COURT WITHIN 60 DAYS OF THIS DATE.**

**McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.**

1. The record more frequently uses the spelling of "Brittany," and we have used that here.