974 So.2d 265 (2008)
Robert Scott LEWIS, Appellant
v.
Jackie Carol (Cooper) LEWIS, Appellee.
No. 2006-CA-01817-COA.
Court of Appeals of Mississippi.
February 5, 2008.
William Grady Hatton, attorney for appellant.
Elizabeth Paige Williams, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
GRIFFIS, J., for the Court:
¶ 1. Robert Scott Lewis brought this action against Jackie Carol (Cooper) Lewis for modification of child custody. The chancellor denied the modification and dismissed the action under Rule 41(b) of the Mississippi Rules of Civil Procedure. The chancellor determined that there had been no material change in circumstances that affected the Lewises' children. On appeal, Robert argues that the chancellor's judgment was against the overwhelming weight of the evidence. We find no error and affirm.

FACTS
¶ 2. On August 14, 2002, the Chancery Court of Desoto County entered Robert and Jackie's divorce decree. Jackie was granted full custody of their children: Jessica Lewis ("Jesse"), Caitlyn Lewis ("Caitlyn"), and Robert Copeland Lewis ("Bobby"). Robert was granted visitation. The chancellor's order provided that joint custody *266 was not feasible because Robert and Jackie were not communicating with each other.
¶ 3. On October 3, 2003, Robert filed a petition for modification of custody. Jackie responded with a counterclaim for contempt. The contempt issue was resolved and is not presently before this Court. The chancellor appointed Nancy Liddel to serve as guardian ad litem for the parties' children. Liddel filed a final guardian ad litem report on August 8, 2006, that suggested the children remain in Jackie's custody.
¶ 4. At the hearing, Robert testified that he has always wanted to spend more time with his children. He said that the arrangements under the current court order are contentious at best. Both he and Jackie have trouble arranging visitation on weekends, holidays, and birthdays. Robert testified that it was his belief that the children's best interest would be served if they lived with him. He stressed that he has remarried and has a stable home environment. Robert also testified that he could provide more athletic, and extra-curricular activities for the children.
¶ 5. Robert testified about several negative changes that have occurred since the marriage. Robert testified that Jesse and Jackie have had physical altercations. Robert also discussed Jesse's need for counseling. Robert believed that Jackie will not take Jesse to counseling, but he said that he will take her if she lives with him. Robert also testified that Bobby has been acting out and vandalizing property. Furthermore, Robert stated that Bobby, who is about to enter the fourth grade, reads at a first grade level. This testimony was corroborated by Bobby's tutor, Karen Vogelsang.
¶ 6. Robert also testified that he was concerned that Jackie's boyfriend, Burt, was having a negative impact on the children. Robert claimed that Burt visits Jackie's home every night. Robert also said that Burt has made inappropriate romantic overtures toward Jackie in the presence of the children and has physically disciplined Bobby.
¶ 7. Robert expressed his concern that the children's primary care was provided by their maternal grandmother and her boyfriend, Dickey Williams. As evidence of his concern, Robert discussed a lawsuit where Robert sued Williams, claiming that Williams stole a tractor from him. In that lawsuit, Williams asserted his Fifth Amendment right against self-incrimination regarding whether or not he is a bookie. Robert believes Williams is a bad influence on the children. The evidence also indicated that Williams was dating the children's grandmother before Robert and Jackie's divorce was final.
¶ 8. Robert testified that Jackie allowed the children to stay overnight with their aunt, who has been convicted of possession of drugs and money laundering.
¶ 9. Finally, Robert testified that he was upset because Jackie severely limits any telephone conversations that he has with his children. Robert also believes that Jackie listens to the limited number of conversation that she allows.
¶ 10. Robert's current wife, Barbara, testified that the conflict between Robert and Jackie is mutual. Barbara testified that she believes that Robert should be given more access to his children. However, Barbara also agreed that the children should respect their natural mother and her decisions.
¶ 11. Jesse and Caitlin testified at the hearing, Bobby, who was ten, did not testify. Jesse, who was sixteen, testified that she wanted to live with her father. Jesse stated that she believed that her mother's boyfriend was too old for her *267 mother. Jesse also said that most of the conflicts between her and her mother were. disagreements. Jesse also claimed that it was not Burt's place to discipline her. Jesse testified that she did not get along well with her mom. She also said that she caught Burt lying on her mom's chest at their house.
¶ 12. Caitlin, who was twelve, testified that she wanted to live with her father because she preferred his household. Caitlin stated that much of the time she stayed at her grandmother's house next door because she did not feel comfortable at her mother's house. Caitlin testified that she did not like Burt because he kisses her mother and sucks her mother's toes in front of her and the other children. Caitlin said that Burt had stayed overnight at their house only once, and he slept in a different room than Jackie. However, Caitlin claimed that Burt had stayed at their house many nights until one in the morning. Caitlin stated that Burt only disciplined Bobby once when he grabbed Bobby's arm.

ANALYSIS
¶ 13. In Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003) (internal citations omitted), the supreme court held:
In a case disputing child custody, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. The burden of proof is on the movant to show by a preponderance of the evidence that a material change in circumstances has occurred in the custodial home.
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody.
In considering whether there has been such a change in circumstances, the totality of the circumstances should be considered. Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children.
Furthermore, it is well settled that the polestar consideration in any child custody matter is the best interest and welfare of the child.
¶ 14. Here, the chancellor found that Robert failed to submit sufficient evidence to satisfy part one of this test, a material or substantial change in circumstances. The supreme court further defined part one by stating that "[a]n isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody. Before custody should be changed, the chancellor should find that the overall circumstances in which a child lives have materially changed and are likely to remain materially changed. . . ." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984).
¶ 15. Robert argues that his remarriage and stable home environment are sufficient to constitute a material change in circumstances, which requires a change in custody. Traditionally, Mississippi law has held that, "a change in the circumstances of the non-custodial parent does not, by itself, merit a modification of custody." Riley v. Doerner, 677 So.2d 740, 744 (Miss. 1996). In Riley, the supreme court created a narrow exception to this principle. Id. This exception applies if the custodial parent's home environment is found to be contrary to the child's best interest and the non-custodial parent's home environment *268 has improved and surpassed that of the custodial parent, so that it is now in the child's best interest to live with the non-custodial parent. Id. We agree with the findings of the chancellor because the Riley exception does not apply in this case. The chancellor determined that Jackie's home environment was not adverse to the children's best interest because none of Robert's negative accusations were supported by the evidence presented.
¶ 16. The chancellor also determined that there was no proof of the second element, an adverse effect on the children. While it may be true that Jackie and her boyfriend have had some romantic contact in front of the children, there was no proof in the record that these events were intentional or executed with knowledge that the children were watching. Also, except for the one time when Burt grabbed Bobby's arm, there was no evidence that Burt abused the children. As in Tucker, one isolated incident does not equate to a material change in circumstances requiring modification. See Tucker, 453 So.2d at 1297.
¶ 17. The chancellor made several other findings that were within his discretion, and based on the standard of review, we find no error. The chancellor determined that there was no proof that Bobby's educational and disciplinary problems were related to Jackie's parental care. The physical altercations between Jessie and Jackie were caused by Jessie's negative reactions to Jackie's parenting decisions. Williams, the grandmother's boyfriend, had been involved with the family prior to the divorce. Therefore, the chancellor correctly determined that Williams's contact with the children was not a material or substantial change in circumstances. Robert presented no evidence that Williams had an adverse effect on the children. The chancellor also determined that by allowing the children to stay at the house of an aunt, who had been convicted of nonviolent crimes, for one night did not constitute a material or substantial change of circumstance that was adverse to the children because this was an isolated incident.
¶ 18. As to Jesse's and Caitlin's expressed desire to live with her father, the chancellor correctly determined that there was no reason to consider this issue because there had been no material change in circumstances. We have stated previously:
Mississippi Code Annotated Section 93-11-65 (Rev.2004) allows a child who has attained the age of 12 to state her preference to the court as to whether she would rather live with her mother or father. However, the trial court is not bound to follow the child's preference. See Polk v. Polk, 589 So.2d 123 (Miss. 1991). Furthermore, we have found no authority to support a conclusion that a child's statement, in and of itself, of his or her preference to live with the non-custodial parent would rise to the level of a material or substantial change of circumstances.
D.A.P. v. C.A.P.R., 918 So.2d 809, 824(¶ 62) (Miss.Ct.App.2005). Thus, we find that the chancellor was correct not to consider Jesse's and Caitlin's preference because there was no evidence to support a material or substantial change in circumstances, and the children's preference alone cannot constitute a material or substantial change in circumstances.
¶ 19. Finally, the chancellor emphasized that during Jackie and `Robert's divorce there was an extreme lack of communication, which mandated that he award sole custody to one parent. The chancellor concluded that this problem has not changed and was not a material or substantial *269 change of circumstances that should be considered.
¶ 20. We find no error in the chancellor's decision. Indeed, there was sufficient evidence to support the chancellor's finding that there had not been a material or substantial change in circumstance that would require a change in custody.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.