CARLTON, J.,
for the Court.
¶ 1. Mike[1] appeals the judgment of the Clarke County Chancery Court, which dismissed his action to modify the child custody arrangement between Mike and his ex-wife, Diana. We find that the chancellor failed to consider the totality of the circumstances in determining whether a material change in circumstances existed, which posed a danger to Mike and Diana’s minor child. Therefore, we reverse and remand this case for a new trial with directions for the chancellor to reconsider the issue of modification of child custody.
*1104 FACTS
¶2. Diana and Mike divorced in April 2005. Diana received primary physical custody of the couple’s daughter, Claire, who was born in 2002. Soon after the divorce, Diana married Billy, an offshore oil driller. In January 2005, Billy was arrested on two counts of sexual offenses involving a minor. After marrying Diana in August 2005, Billy was indicted on two counts of statutory rape in February 2006. Billy then pled guilty to one count of statutory rape in September 2006, and he was sentenced to five years in prison, with four years and nine months of his sentence suspended. Diana testified that she was aware before she married him that Billy had been arrested and charged with statutory rape. Diana spoke on Billy’s behalf at his sentencing, placing fault upon the minor for the offense.
¶ 3. Meanwhile, after Billy’s arrest, Mike learned from the statutory rape victim’s mother that Diana and Billy were living together. According to the guardian ad litem’s report, Mike stated that he learned at some point before their marriage that Billy and Diana were living together, but Mike testified at trial that Diana never told him that she was planning to marry Billy. As noted, Billy was arrested in January 2005 and later indicted in February 2006; thus, Diana married him while the charges set forth in the indictment were pending. Mike filed a motion for modification of child custody in January 2006, stating that he feared for the safety of his daughter because of her exposure to Billy. A trial was held on April 9, 2007, where the chancellor determined that a guardian ad litem should be appointed to represent Claire’s interest. At the conclusion of the trial, the court ordered a temporary joint physical custody arrangement, stipulating that Claire was to live with Mike during the two weeks that Billy was home from his offshore job, and with Diana for the two weeks that Billy was offshore working. The court continued the trial to allow a full investigation by the guardian ad litem.
¶4. The guardian ad litem interviewed Mike, Diana, Billy, and Diana’s mother, as well as Mike’s current wife, Diana’s mother, and other family members and friends. On June 7, 2007, the guardian ad litem filed her first report with the court, concluding that Claire’s best interest would not be served by remaining in the custody of Diana while she was married to a registered sex offender convicted of a sexual offense against a minor. The report noted that Diana chose to marry Billy without thinking about Claire, and she put her marriage to Billy before her child’s best interest. On February 10, 2008, the guardian ad litem filed her final report, which reiterated that custody should be changed from Diana to Mike.
¶ 5. At a trial held on February 12 and 13, 2008, and on April 16, 2008, Diana testified that she had filed for a divorce from Billy, based on the ground of irreconcilable differences. Diana also testified that during an interview with the guardian ad litem, the guardian ad litem told her that if she and Billy were no longer married, the guardian ad litem would change her recommendation that custody should be changed from Diana to Mike. However, Diana testified that the divorce was never finalized. The chancellor found that the presence of a sex offender in the child’s home constituted a material change in circumstances adverse to Claire. The chancellor continued the trial, leaving the case open for the sole purpose of receiving evidence of Diana’s marital status.
¶ 6. On June 4, 2008, the court held the second part of the hearing. Diana provided evidence that her divorce from Billy *1105 was finalized on May 22, 2008. Upon this finding, the chancellor held that:
[the] circumstances relied upon by the court for its finding of adverse effect, specifically Diana’s poor judgment and misleading statements, placing Claire in an unsafe situation, subjecting Claire (sic) to rejection in the community, depriving Claire (sic) of an involved stepfather, and providing Claire with a poor example all have presumptively been alleviated and eliminated by the divorce.
The chancellor dismissed Mike’s motion for modification of child custody, finding that without Billy’s presence in the home, the material change in circumstances adverse to the child’s best interest, no longer existed. However, the chancellor determined that since Diana had previously cohabited with Billy despite the pending divorce, Claire’s best interest would be served by entering an injunction to prevent the child from being unsupervised in the presence of a convicted sex offender. The court entered an opinion and judgment to that effect on the same day. Under the decree as written, nothing prohibits Billy and Diana from cohabiting or continuing their relationship in Claire’s presence as long as done under Diana’s supervision.
¶ 7. On appeal, Mike argues that the chancellor erred in (1) failing to properly safeguard a female minor child from a sexual predator by failing to modify custody, (2) failing to conduct an Albright[2] analysis after a finding of material change in circumstances adverse to the minor child, and (3) failing to properly consider a mandatory guardian ad litem’s reports and recommendation.
DISCUSSION
¶ 8. This Court has a limited scope of review on challenges to a chancellor’s decision to deny a request for modification of custody. Creel v. Cornacchione, 831 So.2d 1179, 1183 (¶ 14) (Miss.Ct.App.2002). “We can reverse only when a chancellor’s decision is either manifestly wrong or clearly erroneous, or when the chancellor has applied an erroneous legal standard.” Id.
¶ 9. Mike argues that the chancellor committed manifest error by failing to properly safeguard Claire, a female minor child, from a sexual predator when the chancellor failed to modify custody. In child custody cases, the paramount concern is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In order for a chancellor to modify a child custody decree, the noncustodial parent must prove the following: “(1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child.” Powell v. Powell, 976 So.2d 358, 361 (¶ 11) (Miss.Ct.App.2008) (citing Giannaris v. Giannaris, 960 So.2d 462, 467-68 (¶ 10) (Miss.2007)). If the chancellor finds that there has been a material change in circumstances, the court must then apply the Albright factors to determine which parent should have primary custody. Pearson v. Pearson, 11 So.3d 178, 183 (¶ 14) (Miss.Ct.App.2009).
¶ 10. In such matters concerning the protection of a child from • danger, the judgment of the parent — and parenting skills — are extremely important. Albright, 437 So.2d at 1005. This court has stated that “[w]hile numerous factors may go into the initial consideration of a custody award, see, e.g., IAlbright ], only parental behavior that poses a clear danger to the *1106 child’s mental or emotional health can justify a custody change.” Lambert v. Lambert, 872 So.2d 679, 684 (¶ 22) (Miss.Ct.App.2003) (quoting Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991)). In Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996), the Mississippi Supreme Court similarly held that “when the environment provided by the custodial parent is found to be adverse to the child’s best interest, and ... the non-custodial parent ... is able to provide an environment more suitable than that of the custodial parent, the chancellor may modify custody accordingly.” The court further noted that:
where a child [is] living in a custodial environment clearly adverse to the child’s best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. Evidence that the home of the custodial parent is the site of dangerous and illegal behavior ... may be sufficient to justify a modification of custody, even without a specific finding that such environment has adversely affected the child’s welfare. A child’s resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.

Id.

¶ 11. When considering whether a material change in circumstances has occurred, the court must examine the totality of the circumstances. See In re E.C.P., 918 So.2d 809, 823 (¶ 58) (Miss.Ct.App.2005). A reflection of the factual history in the present case shows that, first, the chancellor, upon learning that Diana was in a relationship with a convicted sex offender, appointed a guardian ad litem to represent Claire’s interests. The chancellor then continued the trial to allow the guardian ad litem to conduct an investigation and report her findings to the court. During this time, the chancellor ordered a temporary change in custody, granting joint physical custody to both parties.
¶ 12. When the trial resumed, the chancellor found that Diana’s marriage to Billy constituted a material change in circumstances. The chancellor cited his concern regarding Claire’s exposure to a convicted sex offender and Claire’s mother’s poor judgment with respect to ensuring Claire’s safety and well-being. The chancellor concluded, based on the report of the guardian ad litem, that Claire’s best interest was not served by remaining in her mother’s custody while Diana was married to a convicted sex offender. During the trial, however, Diana testified that she had filed for a divorce from Billy in July 2007, ten months prior to the hearing, but the divorce was never finalized. Upon learning that Diana had filed for divorce, the chancellor continued the hearing for the purposes of reviewing Diana’s marital status before adjudicating the case.
¶ 13. The record reveals that when Diana discovered that her marriage to the sex offender was resulting in a recommendation of a change in custody from the guardian ad litem, Diana obtained an irreconcilable differences divorce. In addition, Diana and Billy both testified that they did not want to get a divorce, but they proceeded with dissolving the marriage solely so Diana would not lose custody of Clame. The record reflects that Claire was adopted by Mike and Diana because Diana was not able to have childi'en, and that she would be devastated by a loss of custody. However, such emotional claims notwithstanding, evidence showed that Diana continued her relationship with Billy even throughout the divorce proceedings — a private investigator retained by Mike documented that the two spent the night to *1107 gether on numerous occasions after their initial divorce filing. Further inspection of the guardian ad litem’s report also reflected the stigma that was affecting Claire socially due to the presence of a convicted sex offender in the home.
¶ 14. When the final trial was conducted in June 2008, Diana provided evidence to the court that she had obtained a final decree of divorce from Billy on May 22, 2008. Due to the existence of the divorce decree, the chancellor presumed that Billy was no longer in the home, and he held that no material adverse change had occurred. However, we find that such a conclusion and presumption are not supported by the facts in the record. Nothing in the irreconcilable differences divorce decree prevented Diana and Billy from continuing their relationship or even cohabiting, as evidenced by the private investigator’s videotape. Nevertheless, the chancellor held that neither the parties nor the guardian ad litem provided evidence that the divorce decree was void.
¶ 15. Although the divorce decree itself may be perfectly valid and binding, thereby dissolving the marital status, a divorce decree and the lack of marital status do not prevent the parties from continuing their relationship, emotionally or physically, or from cohabiting without marital status. Moreover, evidence reported to the guardian ad litem reflects that the divorce decree was obtained only for the subterfuge purposes of appeasing the court so that Diana could retain custody of Claire, and that Diana was continuing her relationship with Billy throughout the separation period. Due to their lack of veracity to the court, there should be no logical assumption or presumption that Diana and Billy’s lack of marital status would be an impediment to their cohabiting. The fact that Diana and Billy have not been entirely truthful to the court or guardian ad litem especially concerns us because their deceit pertains to the safety of the young child.
¶ 16. Regardless of whether Diana remarries Billy or not, or whether they merely cohabitate without benefit of marital status, we find that the chancellor should evaluate: (1) whether a material change adversely affecting Clame has occurred by her exposure to a sex offender in her mother’s home, and (2) whether any continuing threat of danger or exposure to danger exists. The record is replete with evidence that both Diana and Billy will be untruthful to cover their true actions if it serves their own purposes.[3] If Diana has indeed continued the relationship, posing a potential threat to Claire, the chancellor should evaluate what steps Diana has taken, if any, to protect Claire. Evidence that a child is exposed to dangerous situations may justify modifications without a finding that the child has suffered any negative effects. Riley, 677 So.2d at 744. Therefore, we reverse the chancellor’s judgment and remand this case for the chancellor to determine whether a material change in circumstances adverse to Claire has occurred, and if so, to conduct an Albright analysis.
¶ 17. THE JUDGMENT OF THE CLARKE COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS *1108 APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.

. We use aliases as necessary to protect the minor child’s identity.

. Albright v. Albright, 437 So.2d 1003 (Miss. 1983).

. Billy’s criminal report from his statutory rape conviction shows that he was untruthful to the minor and her parents as to his true activities and relationship with the young girl. Billy utilized his close relationship and friendship with the minor’s parents and family, thereby gaining exposure to the minor and secretly seizing such opportunity to his sexual advantage. He also misrepresented the events to the police during his initial interrogation.