768 So.2d 943 (2000)
Sonya Ann Akers FORSYTHE, Appellant,
v.
David Keith AKERS, Appellee.
No. 1998-CA-01031-COA.
Court of Appeals of Mississippi.
October 3, 2000.
*945 Charles R. Brett, Tupelo, Attorney for Appellant.
Phillip L. Tutor, Pontotoc, Michael Malski, Amory, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND THOMAS, JJ.
BRIDGES, J., for the Court:
¶ 1. This case involves a child custody modification from the Chancery Court of Union County, Honorable Timothy E. Ervin presiding. In this case, appellee David Keith Akers sought a child custody modification for his two minor children. The court awarded the custody modification, and appellant Sonya Ann Akers Forsythe, comes now claiming the trial court erred in four issues
1. WHETHER THE TRIAL COURT ERRED IN HOLDING THE APPELLEE HAD PROVEN A SUBSTANTIAL AND MATERIAL CHANGE IN CIRCUMSTANCES WHICH ADVERSELY AFFECTED THE HEALTH, WELFARE, AND BEST INTERESTS OF THE TWO MINOR CHILDREN, WHEN THE TRIAL COURT MADE NO FINDINGS?
2. WHETHER THE APPELLEE HAD FAILED TO PROVE ABUSE OR NEGLECT?
3. WHETHER THE CHANCELLOR ERRED, AFTER FAILING TO MAKE PROPER FINDINGS, IF HE INCORRECTLY FOLLOWED STATE LAW IN BASING HIS DECISION ON THE TEMPORARY MODIFICATION OF CUSTODY?
4. WHETHER THE CHANCELLOR ERRED IN ARBITRARILY REDUCING THE AMOUNT OF SUMMER VISITATION?
Finding error, we reverse and render.

STATEMENT OF THE FACTS
¶ 2. Sonya Ann Akers Forsythe and David Keith Akers were divorced on January 15, 1993, and custody of their two minor children was given to Mrs. Forsythe. Mr. Akers was given visitation rights and was ordered to pay child support. Mrs. Forsythe married Shan Payne in January of 1994, and during the course of their marriage they had a daughter. They separated and reconciled several times, but separated for the final time in December of 1994. They were formally divorced in 1996. Mr. Akers remarried to Mrs. Tanya Akers in November of 1993. They are still married.
¶ 3. During her separation from Mr. Payne, Mrs. Forsythe and the children moved in with Dr. R. Medlin until August of 1995, when they moved out. She continued *946 to see Dr. Medlin off and on, but their relationship ended when she met John Forsythe, her current husband. She currently lives with him in Tupelo.
¶ 4. In 1995, Mrs. Forsythe approached Mr. Akers about letting him spend some time with his children. Mrs. Forsythe had been having some problems with her son's behavior, and she thought some time with his father may do him some good. The two of them entered a temporary modification of custody dated June 13, 1995, where the children would live with their father from that time to the end of school in May of 1996 with the understanding that at the end of the period the children would go back to live with their mother.
¶ 5. At the end of the one year period in 1996, Mrs. Forsythe went to pick up her children from Mr. Akers's mother-in-law's house, but she was refused access to the children. On May 16, 1996, Mr. Akers filed a motion for modification, and after being served, Mrs. Forsythe answered and filed both a motion for citation for contempt of court, for violating the agreement, and a petition for writ of habeas corpus.[1] On August 5, 1996, Mr. Akers filed a motion for emergency custody claiming neglect and abuse of the children.[2] At the hearing on August 9, 1996, Robert Childers was appointed as guardian ad litem for the children, and the Welfare Department was directed to make home studies of the parties' homes and report back to the court. The guardian found no evidence of abuse, and the Welfare Department found that both homes were considered fit and suitable for the children.
¶ 6. After a one year delay in the case, the trial was held on September 22 and 23, 1997. The chancellor's opinion was rendered on March 20, 1998. The Chancellor, in an order with no findings, granted custody to Mr. Akers, ordered Mrs. Forsythe to pay child support, and decreased the amount of visitation that Mrs. Forsythe would receive.

ANALYSIS OF THE LAW

STANDARD OF PROOF
¶ 7. In analyzing whether or not the grant of a change of custody has been correctly granted by
the chancery court, this Court must look to see if the proper two part test has been met:
First, the moving party must prove by a preponderance of the evidence that, after the entry of the judgment sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.
Phillips v. Phillips, 555 So.2d 698, 700 (Miss.1989); see also Pace v. Owens, 511 So.2d 489 (Miss.1987). Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). The change in circumstances must be in the overall living conditions in which the child is found, and the totality of the circumstances must be considered. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). A change of condition of the non-custodial parent is not enough by itself to warrant a modification. Id. In addition, the polestar consideration in a child custody case is the best interests of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

*947 DISCUSSION
1. WHETHER THE TRIAL COURT ERRED IN HOLDING THE APPELLEE HAD PROVEN A SUBSTANTIAL AND MATERIAL CHANGE IN CIRCUMSTANCES WHICH ADVERSELY AFFECTED THE HEALTH, WELFARE, AND BEST INTERESTS OF THE TWO MINOR CHILDREN, WHEN THE TRIAL COURT MADE NO FINDINGS?
2. WHETHER THE APPELLEE HAD FAILED TO PROVE ABUSE OR NEGLECT?
3. WHETHER THE CHANCELLOR ERRED, AFTER FAILING TO MAKE PROPER FINDINGS, IF HE INCORRECTLY FOLLOWED STATE LAW IN BASING HIS DECISION ON THE TEMPORARY MODIFICATION OF CUSTODY?
¶ 8. The three issues listed above are grouped together in this discussion because they all depend on one key factor; in making his ruling, the chancellor did not outline sufficient findings of fact for this Court to competently decide whether or not he was in error. In his order, the chancellor simply stated he found there was a material change in the circumstances of this case, but he never stated exactly what the change was. He did not state whether or not Akers had succeeded in proving abuse had occurred, nor whether he depended on this fact in making his ruling. He did not state whether the fact that Forsythe had temporarily given up custody had weighed in his decision at all.
¶ 9. In looking at the law, the Mississippi Rules of Civil Procedure set out in rule 52(a) that, "[I]n all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly". M.R.C.P. 52. Though he was not requested to do so in this case, there are some instances in which a chancellor must set out findings of fact, especially where the facts of that case are complex. Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 239 (Miss.1987). In such cases, it is considered an abuse of discretion for a judge to fail to set out such findings of fact. Id.
¶ 10. In applying the law to this case, we must examine whether or not these facts were so complicated that findings should have been set out. In the opinion of this Court, the facts of this case are not as straight forward as the trial court may have found. After examining the record and the briefs of the parties, this Court is not convinced there was an actual material change of circumstances adverse to the best interests of the two children. That this Court disagrees there was a material change proves the facts in this case were more complicated than the chancellor thought they were. When the trial court fails to make proper findings in the order, it makes it impossible for this Court to do its job in deciding whether or not the trial judge was in error. For this reason, the chancellor should have set out his findings in his order, and because he did not do so he abused his discretion.
¶ 11. In disagreeing with the lower court's finding of a material change of circumstances, this Court bases its conclusions on several grounds. The evidence presented in this trial by the plaintiff dealt a great deal with the various relationships of Ms. Forsythe and with the fact she had changed jobs several times. It is well known that case law in this state holds that the relationships or indiscretions of the mother are never enough by themselves to constitute a material change of circumstances. Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983). In addition it must be proven that such conduct adversely affected the child. Id. As stated in the Albright case, there are many things to be looked at in deciding whether or not a material change has occurred, such as health, willingness of the parent, employment, *948 parenting skills, moral fitness, physical and mental health of the child, school record of the child and, as stated above, these factors are to be looked at in a totality of the circumstances. Albright, 437 So.2d at 1005; Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996).
¶ 12. In viewing the evidence presented in this case, there is little to cause this Court to believe a material change in circumstances has occurred that would merit a custody modification. Mr. Akers was quick to point out his ex-wife has been in several relationships since their divorce. As stated above, the relationships of the mother are not enough to prove a material change of circumstances, so therefore the number of relationships Mrs. Forsythe has been in are not enough by themselves to prove a material change of circumstances. Kavanaugh, 435 So.2d at 700. Mr. Akers has also failed to prove these relationships had any adverse effects on either of the children.
¶ 13. Akers's failure to show an adverse effect on the children is not the sole reason this Court finds no material change in circumstances occurred. In the report given to the court by the guardian ad litem, both homes were considered fit. This indicates that in the mother's home the environment would be safe and not adverse to the children's best interest, and because the original custody decree gave custody to the mother, then custody should remain with the mother. In addition the principal and teacher of one of the children testified that while living with the mother the child was an average student, and that the mother was greatly involved in the child's school life. Neither could testify to seeing the father at any school function. The child was doing fine in school while in the mother's care, and the mother was involved in the school, both tending to show there was no material change at all.
¶ 14. As to the issue of abuse claimed by the father in this case, this Court finds there is no evidence to support such a claim. In looking at § 43-21-105(l) and (m) of the Mississippi Code, which sets out the definition of neglected child and abused child, we find none of the evidence in the record indicates any finding that the children in this case were either neglected or abused. Miss.Code Ann. § 43-21-105(l)(m) (Rev. 1993). The father's disagreement with the choices the mother has made in regard to baby sitters is of little importance legally, and it certainly does not rise to the level of abuse or neglect. The pictures included as evidence strongly suggest the father was the one who was too enthusiastic in the discipline of the young boy. We find the chancellor could not cite abuse being a ground upon which he could have based his modification.
¶ 15. As far as the chancellor basing the custody modification on the grounds that the mother agreed to a temporary modification, this would also be an insufficient ground for modification of the custody decree. In a very similar case where the parents agreed to a non-judicial temporary modification, the supreme court held that the chancellor was in error by holding the temporary modification was proof of a change of circumstances. Arnold v. Conwill, 562 So.2d 97, 100 (Miss. 1990). In the case at hand, there was also a temporary modification made binding on the parties by the court. The agreement by the parties to enter a temporary modification cannot be used as evidence there was a material change of circumstances; therefore, the chancellor could not rely on this as evidence of a material change.
¶ 16. In conclusion, not only was the chancellor in error for failing to report its findings, the chancellor was in error for finding a material change in circumstances. For these reasons, we reverse and render.

4. WHETHER THE CHANCELLOR ERRED IN ARBITRARILY REDUCING THE AMOUNT OF SUMMER VISITATION?
*949 ¶ 17. In examining this issue, it is interesting to note that both the appellant and appellee pointed out in their briefs that they disagreed with the trial, court's actions in this area. In the area of visitation, chancellors are given broad discretion, but this Court will not hesitate to reverse such rulings where the trial judge abuses this discretion. Rodgers v. Taylor, 755 So.2d 33 (¶ 12) (Miss.1999). In determining such awards chancellors are above all things to consider the best interests of the child, while still considering the rights of the non-custodial parent and the need for the child to maintain a healthy and loving relationship with the non-custodial parent. Id.
¶ 18. In this case, it is plain to this Court that the chancellor abused his discretion in decreasing the amount of visitation allowed to the mother. Nowhere was this requested by the parties. In the guardian's report, the guardian ad litem stressed the need of both children to be in contact with both parents. It can hardly be said that decreasing the amount of time the children get to spend with either parent would be in the children's best interest. The lessening of visitation in this case does nothing to suit the needs of the children, and we consider it to be an abuse of discretion. This error in addition to those previously stated provide ample basis for a reversal, and for these reasons, we reverse and render.
¶ 19. In conclusion, we find the chancellor erred in failing to lay out specific findings in support of his order, that the chancellor erred in finding a material change of circumstances and modifying child custody, and we find the chancellor also erred in decreasing the amount of visitation allowed to the mother. Therefore, we reverse and render.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF UNION COUNTY FINDING A MATERIAL CHANGE OF CIRCUMSTANCES AND MODIFYING CUSTODY IS REVERSED AND RENDERED. PHYSICAL CUSTODY AND THE VISITATION OF THE PREVIOUS ORDER REINSTATED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., IRVING, LEE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J. AND MOORE, J., NOT PARTICIPATING.
NOTES
[1] Under Rule 81(d) of the Mississippi Rules of Civil Procedure, actions such as those dealing with violating a child custody agreement are properly brought in the form of complaints or petitions. The use of a motion to begin such an action is not intended to be proper. M.R.C.P. 81.
[2] Under Rule 81(d) of the Mississippi Rules of Civil Procedure, actions such as those dealing with modifying child custody are properly brought in the form of complaints or petitions. The use of a motion to begin such an action is not intended to be proper. M.R.C.P. 81.