GRIFFIS, P.J.,
for the Court:
¶ 1. Michael Goolsby appeals the chancellor’s judgment that denied a change in custody, modified the visitation schedule, and increased the amount of child support Michael is to pay. Michael’s issues can be condensed into an analysis of whether the chancellor erred when he modified the visitation schedule and declined to modify the custody arrangement. We find no error and affirm.
FACTS
¶ 2. Angela and Michael Goolsby were divorced on April 25, 2007. They have two children, Kyla and Baila. Angela and Michael entered into a property-settlement agreement that established shared joint legal custody and granted Angela primary physical custody. The agreement granted Michael visitation on alternating weekends.
¶ 3. Also, when Michael did not have weekend visitation, he was allowed to pick the children up from school on Monday afternoon and return them to school on Wednesday morning. However, Angela and Michael deviated from the schedule six to eight months after entering into the agreement and changed Michael’s weekday visitation to Wednesday afternoon to Friday morning. Angela and Michael followed the revised schedule until February 2011.
¶ 4. Baila, the oldest child, was thirteen years old when she testified and expressed concerns about the current visitation schedule. She testified that it was inconvenient to go back and forth between homes in the middle of the week. Also, *1001 Baila had trouble with her math homework and usually turned to her stepfather, Eric, for help. Baila testified that Michael tried to help with her homework, but it was a source of frustration for them both.
¶ 5. Baila also testified that as she has gotten older, she has developed “female issues.” She said that she is more comfortable with her mother during that time. Baila expressed a desire to visit Michael every other weekend.
¶ 6. Kyla did not testify. Angela testified that Kyla cries every time she has to go to Michael’s house but is fine once she gets there.
¶ 7. Baila and Kyla are involved in extracurricular activities. They are active in church and gymnastics. Baila has regular tutoring sessions. Angela testified that she must schedule the children’s extracurricular activities on days that they are in her care because once Michael did not pick Baila up on time from tutoring. On another occasion, Michael failed to take Baila to a church activity. Michael contends that he was not informed of the activity until after it had started. He attempted to make the visitation situation more convenient by purchasing a home in Hernado so that the children could ride the bus to his house from school. By all accounts, Michael has a strong relationship with his children.
¶ 8. Under the property-settlement agreement, Michael was obligated to pay $400 a month in child support. Michael was also responsible for half of the medical expenses incurred on behalf of the children as well as half the cost of the children’s insurance premium. He was responsible for half the costs of the children’s extracurricular activities.
¶ 9. On June 8, 2010, Angela filed a petition to modify final judgment through the Mississippi Department of Human Services to increase the amount of child support due to a material change in circumstances. The family master increased Michael’s child support to $671 a month and ordered him to pay $250 in attorney’s fees. On October 21, 2010, Michael filed a motion to modify the report of the family master or, in the alternative, to alter or amend the judgment or for a new trial.
¶ 10. On November 24, 2010, Michael filed his response and a counter-petition to modify the final judgment. He requested his child support be reduced or extinguished based on the amount of visitation he exercised and the decreased needs of the children since the entry of the final decree. Michael then filed his petition to modify the final decree and property-settlement agreement. Under the property-settlement agreement, Angela had sole physical custody, and Michael had visitation. Michael requested that the custody arrangement be modified to grant Angela and Michael joint physical custody.
¶ 11. The chancellor did not modify the custody arrangement because he did not find a material change in circumstances that adversely affected the children. The chancellor did, however, find a sufficient basis to modify the visitation schedule. The chancellor determined that because the existing visitation schedule did not work and was not in the best interest of the children, a change in the visitation schedule was warranted.
¶ 12. The chancellor also noted that both Angela and Michael found the visitation schedule to be unworkable, and they had extrajudicially modified the schedule. The chancellor observed that Baila would soon enter high school and, as such, would have more homework and need more stability. Also, Baila already had difficulty with her homework while she was with Michael. Baila’s female health issues and the extracurricular activities of both chil *1002 dren made the current visitation schedule impractical. The chancellor granted Michael visitation every other weekend on the first, third, and fifth weekends of every month. Additionally, Michael received six weeks of visitation in the summer and alternating spring and fall breaks.
¶ 13. The chancellor modified Michael’s child support obligations to $651.23 a month. Michael was still required to pay half of the children’s medical expenses and insurance premiums. The chancellor relieved Michael of his obligation to pay half of all the costs of the children’s extracurricular activities. The chancellor noted that older children require more expenses due to extracurricular activities, clothing, and makeup. The chancellor also considered the impact of inflation on the agreement that had been established four years previously and found that expenses had increased. Finally, the chancellor evaluated the financial condition of the parties and took into account their earning capacity, special needs, and expenses. To arrive at the final figure, the chancellor computed Michael’s adjusted gross income at $3,256.12 per month and required him to pay twenty percent, as established by the statutory child support guidelines in Mississippi Code Annotated Section 43-19-101 (Rev.2009).
STANDARD OF REVIEW
¶ 14. We “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly ■wrong,[or] clearly erroneous, or [applied] an erroneous legal standardf.]” Chapel v. Chapel, 876 So.2d 290, 292-93 (¶ 8) (Miss.2004) (citing Townsend v. Townsend, 859 So.2d 370, 371-72 (¶ 7) (Miss.2003)). This Court will not reject a chancellor’s factual findings “when supported by substantial evidence in the record.” Weigand v. Houghton, 730 So.2d 581, 585 (¶ 14) (Miss.1999) (citations omitted).
ANALYSIS

1. The chancellor did not err when he modified the visitation schedule because the existing schedule was not working and modification was in the best interest of the children.

¶ 15. To modify a visitation schedule “all that need be shown is that there is a prior decree providing for reasonable visitation rights which [is not] working and that it is in the best interests of the children.... ” Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986).
¶ 16. In Mercier v. Mercier, 11 So.3d 1283, 1286-87 (¶ 13-14) (Miss.Ct.App.2009), the father requested a change in the visitation schedule because the existing visitation schedule disrupted the children’s routine. Under the existing schedule, the children were away from their hometown for three weekends a month. Id. at 1287 (¶ 14). The chancellor modified the schedule because of its disruptive impact. Id.
¶ 17. Much like Mercier, the chancellor here modified the visitation schedule because of the disruptive impact the existing visitation schedule had on the children’s lives. The chancellor specifically noted that Baila’s involvement in extracurricular activities made midweek visitation difficult. He observed that Baila would soon enter high school and would require more stability.
¶ 18. Baila testified that it is difficult and inconvenient to change homes during the week. She also stated that it is difficult for her to complete her homework while in Michael’s care and that her math homework causes tension between them. Kyla cries every time she goes to Michael’s house. However, she is fine when she gets there. The disruptive effect of the visita *1003 tion schedule is analogous to Mercier. Thus, we find that there was substantial evidence in the record to support the chancellor’s determination that the existing schedule was not working.
¶ 19. In Jones v. McQuage, 932 So.2d 846, 850 (¶ 16) (Miss.Ct.App.2006), this Court rejected the chancellor’s determination that the visitation schedule was not working. Jones is distinguishable from the facts here. This Court in Jones based its conclusion on the fact that not enough time had passed to give the schedule an opportunity to work because the petition to modify was brought only four months after the schedule had been put into effect. Here, more than enough time had passed to give Michael’s and Angela’s agreement an opportunity to work.
¶ 20. We find that the chancellor’s ruling was supported by substantial evidence and not manifestly wrong.

2. The chancellor did not err when he declined to modify the custody arrangement because there was no material change in circumstances adverse to the best interest of the children.

¶ 21. To grant a change in custody, the non-custodial parent must prove a substantial change in circumstances has occurred; the change adversely affects the children; and a change in custody is in the children’s best interest. McDonald v. McDonald, 39 So.3d 868, 880 (¶37) (Miss.2010) (citing Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)). The material change in circumstances must occur in the custodial home. Id. (citing Giannaris v. Giannaris, 960 So.2d 462, 469 (¶ 12)(Miss.2007)). The chancellor should examine the “overall circumstances in which a child lives.” Id. (quoting Touchstone v. Touchstone, 682 So.2d 374, 378-79 (Miss.1996)).

A. The chancellor did not err when he determined that no material change in circumstances had occurred.

¶ 22. To decide whether to increase the visitation rights of the noncustodial parent, the chancellor must find a material change in circumstances has occurred.
¶23. In Forsythe v. Akers, 768 So.2d 943, 946 (¶ 4) (Miss.Ct.App.2000), the mother thought the children should spend some time with their father. The children went to live with their father until the end of the next school year. Id. When the mother arrived at the appointed time at the end of the year to pick up the children, she was not allowed to do so. Id. at (¶ 5). The chancellor found a material change in circumstances had occurred, and the custody arrangement should be modified. Id. at 948 (¶ 15). This Court reversed the chancellor’s decision and said a non-judi-eial temporary modification in the custody arrangement is an insufficient ground to modify a custody decree. Id. (citing Arnold v. Conwill, 562 So.2d 97, 100 (Miss.1990)).
¶ 24. In Arnold, the supreme court did not find that a material change in circumstances had occurred when a mother asked the father of their child to take custody of their child while she stabilized her living situation. Arnold, 562 So.2d at 100. The court determined that the circumstances did not warrant a change in custody. Id.
¶ 25. This case is similar to Arnold and Forsythe. Angela agreed to increase Michael’s time with the children but did not abandon the children or relinquish parental control over them. Indeed, Angela and Michael’s situation is even less drastic than in Arnold and Forsythe. In each of those cases, the custodial parent allowed the children to stay with the non-custodial par *1004 ent for an extended period of time and actually temporarily modified custody. Here, Angela simply increased Michael visitation rights. If the courts declined to find a material change in circumstances occurred in those cases, we should not do so now when Michael’s increased parental rights pale in comparison.
¶ 26. In Brocato v. Brocato, 731 So.2d 1138, 1141 (¶ 10) (Miss.1999), the Mississippi Supreme Court agreed with the chancellor’s determination that a material change in circumstances had occurred. The mother originally had custody of the son and daughter. Id. at 1139 (¶ 2). However, the custody order was modified, and the father was granted custody of both children once the mother sought treatment for substance abuse and an eating disorder. Id. Subsequently, the father “voluntarily and independently relieved himself of responsibility” over the son; the daughter lived with her father’s parents; and the mother completed rehabilitation. Id. at 1141 (¶ 10). The court determined these facts constituted a material change in circumstances. Id.
¶ 27. Michael’s and Angela’s situation is distinguishable from Brocato. In Brocato, the father completely relinquished control over his son and sent him to live with his mother’s father due to disciplinary issues. Id. at 1139-40 (¶ 3). Angela never relinquished control over Baila or Kyla. Michael argues that when Angela increased his visitation, she gave up control. We disagree. Such cooperation between parents should be encouraged, not punished. When Angela allowed Michael to increase the amount of time he spent with Baila and Kyla, she did not give up her parental control over the children as the father did in Brocato. Instead, she acted like a responsible custodial parent who allowed the non-custodial parent a greater opportunity for a relationship with his children.
¶ 28. Also, there is no other evidence in the record that could establish a change in circumstances. Whereas in Brocato, the mother had completed treatment for her drug abuse and eating disorder, the record here presents no radical change in facts that establishes a parent lacks parental capacity or has corrected past parenting issues. This Court determines that there is no substantial credible evidence in the record contrary to the chancellor’s determination that a substantial change in circumstances had not occurred. For these reasons, the chancellor did not commit manifest error. An Albright analysis[1] to determine what is in the best interest of the children was unnecessary.

B. The property-settlement agreement, which granted Michael liberal visitation, did not establish a de facto joint-custody agreement.

¶ 29. The Mississippi Supreme Court has declared that “the claim that joint legal custody and sole custody with liberal visitation are indistinguishable is not true.” Rutledge v. Rutledge, 487 So.2d 218, 220 (Miss.1986) (quoting David J. Miller, Joint Custody, 13 Fam. L.Q. 345, 361 (1979)).
¶ 30. In Self v. Lewis, 64 So.3d 578, 580 (¶ 3) (Miss.Ct.App.2011), the father had physical custody of the children. However, the mother enjoyed liberal visitation. Id. She was granted visitation every other weekend with the children. Id. Furthermore, on the weeks she did not have the children on the weekend, she had them on Monday, Tuesday, and Wednesday nights. Id. at 585 (¶ 31). The chancellor determined that because of the mother’s extensive visitation, a de facto joint-physical- *1005 custody arrangement had been established. Id. at 58B (¶ 25).
¶ 31. The chancellor also found that the father’s various questionable activities and his move to Florida constituted a material change in circumstances that had an adverse effect on the children. Id. This Court agreed with the chancellor’s result but declined to accept the assertion that de facto joint custody had been established. Id. at 585 (¶ 34). We noted that the custody order expressly granted the father physical custody. Id. at 585 (¶ 33). Instead, the Court affirmed based on the father’s various nefarious activities, which constituted a material change in circumstances. Id. at 585 (¶ 34).
¶ 32. Michael was actually granted one night less visitation than the mother in Self. This Court declined to recognize de facto custody arrangements in Self. Thus, we decline to do so now when the custody agreement specifically granted Angela sole physical custody, and Michael’s visitation is even less liberal than the visitation schedule in Self. We find that this issue is without merit.
¶ 33. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).